UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

99 JAN 29 PM 3: 02

U.S. DISTRICT COURT
H.D. OF ALABAMA

JAMES O. SPENCER, JR.,              )
                                     )
        Plaintiff,                   )
                                     )
    vs.                              )        CV 97-BU-3101-S
                                     )
BUSINESS MEN'S ASSURANCE             )        ENTERED
COMPANY OF AMERICA, et al.,          )
                                     )        JAN 29 1999
        Defendants.                  )

# Memorandum Opinion

This cause comes on to be heard on a motion for summary judgment filed by the defendant Business Men's Assurance Company of America ("BMA") on October 30, 1998. In its motion the defendant contends that the plaintiff, James O. Spencer ("Spencer"), cannot present a genuine issue of triable fact that he is entitled to long-term disability benefits under the health benefits policy provided by his previous employer, the Balch & Bingham law firm, an employee benefit plan covered under the Employee Retirement Income Security Act of 1974. The plaintiff responds that the determination that he was not entitled to benefits under the plan was arbitrary and capricious, under the heightened arbitrary and capricious standard of review.

Summary judgment provides the parties an invaluable opportunity to test the mettle of a case before it ever reaches trial. On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is

weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment has the initial responsibility of informing this court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The movant's burden is not meager; it must illuminate for the court the reasons why the non-movant cannot or does not raise a genuine issue of material fact sufficient to support a trial.

Once the moving party has satisfied this initial burden, however, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 523 (11th Cir. 1994). Rule 56(e) requires the nonmoving party to "go beyond the pleadings" and by "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts'" showing there exist genuine issues for trial. *Celotex*, 477 U.S. at 324; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). "Tenuous insinuation" and empty speculation based on loose construal of the evidence will not satisfy the non-movant's burden. *Cf. Mesnick v. General Elec. Co.*, 950 F.2d 816, 820 (1st Cir. 1991), *cert. denied*, 504 U.S. 985 (1992).

While the court may consider the offered "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" in deciding whether to grant or deny a summary judgment motion, FED. R. CIV. P. 56(c), the Rule "saddles the non-movant with the duty to 'designate' the specific facts in the record" supporting its claims. *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). "Rule 56 . . . does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Id. See also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."), *cert. denied*, — U.S. —, 116 S.Ct. 74 (1995).

In resolving whether a given factual dispute requires submission to a jury, the court must inspect the presented evidence through the looking glass of each party's substantive evidentiary

burden. *Anderson*, 477 U.S. at 254-55. The court, however, must avoid weighing conflicting evidence for probity or making credibility determinations. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather decide whether such issues exist to be tried. The Court must avoid weighing conflicting evidence or making credibility determinations." *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993). At the same time, "[t]he nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury question.'" *Tidwell v. Carter Products*, 135 F.3d 1422, 1425 (11th Cir. 1998) (*citing Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989)).

## Facts

Spencer, a seasoned litigation attorney employed for twenty-six years by Balch & Bingham, lost his job with the law firm on December 31, 1995. On January 9, 1996, Spencer delivered himself to Grayson & Associates, a medical group apparently specializing in "moral disorders,"[1] where he was seen by Robbin Grayson, a psychotherapist. He returned on January 15, 1996, and was diagnosed by Dr. Garry S. Grayson ("Dr. Grayson") as suffering from a major depressive episode. Dr. Grayson advised medication for depression, altering the medication schedule for depression initiated by Spencer's primary care physician.[2] The plaintiff then applied for and received short-term benefits from Balch & Bingham. Spencer was evaluated again by Dr. Grayson on March 28, 1996. While showing some improvement due to his medication regimen and continued psychotherapy with Robbin Grayson, Dr. Grayson altered the medication schedule to take account of side effects the plaintiff was suffering.

On March 29, 1996, the plaintiff applied for long-term disability benefits with BMA.[3]

---

[1] In the Nineteenth Century, the term "moral disorder" was often used to refer to what would be termed today a mental illness or disorder.

[2] This included starting the plaintiff on Pamalor, an anti-depressant.

[3] The defendant claims not to have received the application until April 9, 1996.

According to the defendant, the plaintiff's application did not contain the plaintiff's medical records. However, the application did contain an "attending physicians statement" authored by Dr. Grayson, indicating that the plaintiff became disabled, perhaps as early as June of 1995, as a result of a major depressive episode. It was also accompanied by an authorization of release of information of all medical and hospital records signed by Spencer.

On June 7, 1996, BMA sent to Dr. Grayson a series of follow-up questions to the statement written by him. On July 8, Dr. Grayson responded in a letter, in which he stated:

> Mr. Spencer was diagnosed with moderate depression after losing his position at his law firm. In retrospect, it is clear that he has been depressed for a long time and it has significantly affected his ability to practice law. He is doing better, but at his age with the length of his illness, we think it is not realistic to think that he will ever practice law again as he has in the past.

On July 17, 1996, BMA, unsatisfied with the limited account in brief epistle of the plaintiff's condition, requested Dr. Grayson to provide additional information on Spencer, including medical records. Attached to the request was the release signed by the plaintiff.

Two days later, Spencer called BMA, inquiring about his claim of long-term disability. Spencer was told that the letter received from Dr. Grayson was inspecific and that BMA needed copies of Dr. Grayson's records regarding Spencer's treatment. BMA also informed Spencer that because depression was not typically a condition extending for greater than six months, he needed to prove why his depression was permanently debilitating.

On August 23, 1996, BMA contacted Spencer, informing him that nothing new had been received from Dr. Grayson and requesting Spencer to ask Dr. Grayson to release his records. On August 28, 1996, Dr. Grayson responded to BMA's questionnaire. No medical records accompanied this response.

On September 6, 1996, BMA wrote the plaintiff, informing him that his request for benefits was being denied because he had failed to provide it with proof of disability and with proof that he was under the regular care of a licensed physician. The plaintiff was also informed that he had sixty days in which to appeal his decision.[4] The plaintiff did not respond until 177 days later; on that date, BMA received an extensive letter from Dr. Grayson detailing his treatment of Spencer and his

---

[4] The correct period was ninety days.

opinion that Spencer would be unable to resume his work. Again, no medical records were included.

On March 13, 1997, BMA informed Spencer that the letter received would not constitute an appeal. Then, on April 14, 1997, BMA received a letter from the plaintiff's attorney, requesting that the defendant reconsider its denial of benefits. BMA wrote the plaintiff's attorney on May 13, 1997, advising him that it would undertake a comprehensive review of the plaintiff's claim.

The defendant forwarded all documents involved in the plaintiff's claim to Dr. Dennis Cowan, a licenced psychiatrist, for review and advice. Less than two weeks later, BMA recieved a report from Dr. Cowan which stated that the evidence provided by the plaintiff was "inadequate to render a final opinion regarding the above named individual's mental status and vocational capabilities." Dr. Cowan also advised BMA that it attempt to obtain those records, and suggested several ways in which it could do so.

On July 3, 1997, BMA wrote the plaintiff's attorney requesting medical records on the plaintiff. The letter also informed the plaintiff that no records had been received from Dr. Grayson. Rather than respond, on October 22, 1997, the plaintiff filed suit in the Circuit Court of Jefferson County, Alabama. The case was subsequently removed to federal court and an amended complaint was filed identifying the instant claim as one for benefits under 29 U.S.C. § 1132(a)(1)(B).

## Contentions & Analysis

The defendant first claims that the plaintiff's claim should be dismissed because the plaintiff failed to exhaust his administrative remedies. In *Counts v. American General Life and Accident Ins. Co.*, 111 F.3d 105, 107 (11th Cir. 1997), the Eleventh Circuit Court of Appeals stated:

> The law is clear in this circuit that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court. *Springer v. Wal-Mart Associates' Group Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990); *Mason v. Continental Group, Inc.*, 763 F.2d 1219, 1225-27 (11th Cir. 1985). However, district courts have discretion to excuse the exhaustion requirement when resort to administrative remedies would be futile or the remedy inadequate. *Curry v. Contract Fabricators, Inc. Profit Sharing Plan*, 891 F.2d 842, 846 (11th Cir. 1990).

The plaintiff argues, first, that he exhausted his administrative remedies because he was given a *de facto* appeal when BMA decided to undertake a comprehensive review of the plaintiff's claim for benefits on May 13, 1997. Further, the plaintiff asserts, any resort to administrative remedies now

that the case has been filed would be futile.

The comprehensive review in the instant case seems to have counted as an appeal of the plaintiff's claim for benefits, along with the opportunity for the plaintiff to provide additional documents to BMA to aid them in the review of the termination of benefits. However, before any review was completed, the plaintiff filed suit, short-circuiting BMA's opportunity for reexamination. The court concludes that the plaintiff failed to exhaust his administrative remedies.

The plaintiff asserts that exhaustion in the instant case is futile because BMA continues to deny his claim. The mere fact that the defendant has yet not reversed itself puts the cart before the horse; the defendant was never provided the opportunity to rule on the appeal. *See Springer v. Wal-Mart Associates' Group Health Plan*, 908 F.2d 897, 900-01 (11th Cir. 1990).

### Conclusion

For the foregoing reasons, the defendant's motion for summary judgment will be GRANTED. The instant claim will be DISMISSED, without prejudice, in order to provide plaintiff the opportunity to appeal any denial of benefits by BMA once administrative remedies are exhausted.

DONE and ORDERED this 29th day of January 1999.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE